No. 90-225

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

ROCKWOOD SCOTT BROWN and DEBORA A. BROWN, husband and wife,

Plaintiffs and Respondents.

-v-

DOUGLAS E. TINTINGER, PEARL TINTINGER and THOMAS TINTINGER,

Defendants and Appellants.

---

APPEAL FROM: District Court of the First Judicial District, In and for the County of Lewis and Clark, The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carl A. Hatch; Small, Hatch, Doubek & Pyfer; Helena, Montana

For Respondent:

Peter Michael Meloy; Meloy Law Firm; Helena, Montana

---

Submitted on Briefs: October 11, 1990

Decided: November 29, 1990

FILED
'90 NOV 29 AM 10 24
ED SMITH, CLERK
MONTANA SUPREME COURT

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs, Rockford and Debora Brown (Browns), filed this suit to quiet title to their real property and particularly to determine whether defendants, Douglas, Pearl, and Thomas Tintinger (Tintingers), have a perfected prescriptive easement across Browns' property. Tintingers cross claimed, claiming a right of access across Browns' property, intentional attempt by Browns to deprive them of use of the access, and seeking damages caused by the deprivation of access. Following a non-jury trial, the District Court for the First Judicial District, Lewis and Clark County, entered judgment for the plaintiffs, quieting title in plaintiffs as owners in fee simple, and declaring that defendants have no right, title, or interest in or upon plaintiffs' property. Defendants appeal. We affirm.

The issues are:

1. Did the District Court err in concluding that the Quiet Title Decree issued in 1948 extinguished any alleged easement claimed by Tintingers?

2. Did the District Court err in concluding that following the Quiet Title Decree in 1948 the use of the road by the Tintingers was permissive and not adverse?

In 1984 the Browns purchased a parcel of land situated in Lewis and Clark County. Tintingers are the owners of a patented mining claim known as the "Independent," and have the right to mine on an unpatented claim known as the "Good Chance." The Independent and Good Chance are located north of the property owned by the

Browns. A strip of Forest Service land lies between the mining claims and Browns' property. An unimproved dirt road begins at a public road on the south boundary of the Browns' property, crosses Browns' property, then crosses the Forest Service strip and ends at the Independent.

Various members of the Tintinger family used this dirt road for access to the Independent and Good Chance mining claims for over 50 years. In 1947, the Henkes, previous owners of the Browns' property, brought a quiet title action naming all previous owners of the property together with:

> any and all persons unknown who claim or may claim any right, title, or interest in, or lien or encumbrance upon the real property described in this complaint, or any part thereof, adverse to the plaintiff's [sic] title thereto, whether such claim or possible claim be present or contingent, including any claim or possible claim of dower, inchoate or accrued.

A Decree of Quiet Title for the Henkes was issued February 17, 1948.

Eugene Menth subsequently purchased the property from the Henkes. Menth deeded the property to Norwest Bank in lieu of foreclosure in 1982. The Browns purchased the property from Norwest Bank in 1984 and in November of that year the Browns erected a chain barrier across the entrance to the road to keep out hunters and Christmas tree cutters.

In May of 1985, the Tintingers called the Browns and demanded access to the road. The Browns refused to give permission and the Tintingers used the road without permission until 1987 for their annual assessment work at the mines. In 1987, Browns gave permission to the Tintingers to use the access for the annual

assessment work. In April 1988, the Browns filed this action to prevent the Tintingers' further use of the road.

I

Did the District Court err in concluding that the Quiet Title Decree issued in 1948 extinguished any alleged easement claimed by Tintingers?

None of the Tintingers were named as defendants in the 1948 Quiet Title Action. The District Court concluded that any easement that might have existed in behalf of the Tintingers was extinguished under the Decree's language "any and all persons unknown who claim or may claim any right, title, or interest in, or lien or encumbrance upon . . ." The court's Conclusion of Law No. 2 states:

> The decree of quiet title issued in 1948 extinguished any alleged easement claimed by the Tintingers. The decree, by its own language, extinguished any lien or encumbrance on the property adverse to the owner. The Tintingers are bound by the decree, pursuant to Section 70-28-109, M.C.A., which provides:
>
> > Every person made a defendant to such action by name and every unknown claimant or possible claimant upon whom service has been made by publication . . . shall be bound by the judgment or decree entered in such action, subject to the right of any such defendants to apply for relief in any manner provided by the statutes applicable to the case of a defaulting defendant served only by publication. (Emphasis added.)
>
> The record does not reveal any legal action taken by the Tintingers to challenge the quiet title decree on the basis of faulty or invalid service of process pursuant to the above-quoted statute.

The Tintingers argue that the Henkes obviously knew the Tintingers were using the road as access to their mining claims and

therefore they were not unknown or possible claimants, and that by law the Henkes should have named the Tintingers as defendants if they intended to extinguish the easement.

There is no evidence in the record showing that the Henkes knew of the Tintingers use. Absent knowledge by Henkes, the "persons unknown" language in the Decree extinguished, any right, title, or interest Tintingers may have or may have been attempting to perfect during the period prior to the 1948 Quiet Title Decree.

We hold the District Court did not err in concluding that the Quiet Title Decree issued in 1948 extinguished any alleged easement claimed by Tintingers.

II

Did the District Court err in concluding that following the Quiet Title Decree in 1948 the use of the road by the Tintingers was permissive and not adverse?

In order to establish a prescriptive easement, the Tintingers must show open, notorious, exclusive, adverse, continuous and uninterrupted use for the full statutory period. Downing v. Grover (1989), 237 Mont. 172, 175, 772 P.2d 850, 852. The statutory period is five years. Section 70-19-401, MCA. All elements of prescriptive easement must be proved by a preponderance of the evidence or the claim will fail. Downing at 175, 772 P.2d at 852. All elements must be proved in a case such as this because "one who has legal title should not be forced to give up what is rightfully his without the opportunity to know that his title is in jeopardy and that he can fight for it." Id.

In order to perfect a prescriptive easement, the Tintingers

must establish the elements during a 5 year period following the 1948 Quiet Title Decree. The Henkes sold the property to Menth in 1951. Menth testified:

> Q. During your ownership of the land, do you ever remember seeing Mr. Tintinger using that road?
>
> A. Yes.
>
> Q. How often did you see him use it, if you can remember?
>
> A. To my knowledge, not very often. Once a month. I don't know. I have no idea, really.
>
> Q. Did you have any conversations with him --
>
> A. Sure. I talked to him all the time.
>
> Q. While he was up in the vicinity of your property?
>
> A. Sure. We were good friends.
>
> Q. What was your understanding about his use of that road? Did he have your permission to use it?
>
> A. Definitely.

The standard of review for a civil case for a judge sitting without a jury is whether or not the District Court's findings are clearly erroneous. Dennis v. Tomahawk Services, Inc. (1989), 235 Mont. 378, 379, 767 P.2d 346, 347. This Court will not substitute its judgment for that of the trial court absent that showing. Id. Menth's testimony is sufficient to support the District Court's finding that Tintingers' use of the road from 1951 to 1982 was permissive and not adverse.

In 1982 Menth deeded the property to Norwest Bank and Norwest Bank sold the property to the Browns in 1984. In November 1984, the Browns erected the chain barrier, and in May of 1985 the Browns

refused to give permission to the Tintingers to use the road. In 1987 the Browns gave the Tintingers permission to use the road for their yearly assessment work only.

There is no evidence that Norwest Bank had any notice whatsoever that the Tintingers were using the road either permissively nor adversely. Likewise there is no evidence that the Browns knew of any permissive or adverse use of the road by the Tintingers until May of 1985. The period of time from May 1985 until the filing of this action in April, 1988 is less than the statutory five-year period to establish a prescriptive easement and thus it is immaterial whether Tintingers' use was adverse or permissive during this period. Therefore, the Tintingers have not established an easement by prescription over the Browns' property.

We hold that the District Court did not err in concluding that following the Quiet Title Decree in 1948, the use of the road by the Tintingers was permissive and not adverse.

Affirmed.

Justice

We Concur:

Chief Justice

Justices